IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WALTER JEFFERSON, No. B-31401, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 13-cv-00106-GPM |
| | ) |
| MARC HODGE, | ) |
| ASSISTANT WARDEN STORM, | ) |
| DIRECTOR GODINEZ, | ) |
| DENSMORE, | ) |
| KOHN, and | ) |
| LINGLE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff Walter Jefferson is in the custody of the Illinois Department of Corrections ("IDOC"), currently housed at Lawrence Correctional Center ("Lawrence"). Pursuant to 42 U.S.C. § 1983, Jefferson filed suit on February 4, 2013, alleging deprivations of his constitutional rights, and perceived differences in the conditions of confinement at Lawrence compared with other level two, medium security IDOC facilities (Doc. 1). The initial complaint asserted claims under the Equal Protection Clause of the Fourteenth Amendment, and regarding cruel and unusual punishment in violation of the Eighth Amendment. By Order dated March 22, 2013, various claims and Defendants were dismissed with prejudice, but Plaintiff was granted leave to file an amended complaint asserting an Eighth Amendment pertaining to the conditions of confinement at Lawrence (Doc. 9). Now before the Court are Plaintiff Jefferson's motion to amend complaint (Doc. 12), motion for leave to amend complaint (Doc. 13), and his amended complaint (Doc. 14).

**Motions to Amend**

As a preliminary matter, the Court notes that Plaintiff's amended complaint (Doc. 14) was filed by the Clerk of Court because Plaintiff had been granted leave to file an amended complaint. However, Plaintiff's two motions seeking leave to amend the complaint (Docs. 12 and 13) reflect that the amended complaint actually exceeds the parameters prescribed by the Court, adding three new defendants and what, arguably, is a new and separate claim.

More specifically, Plaintiff adds an Eighth Amendment claim against Food Service Manager Densmore, Food Service Supervisor Kohn, and Defendant Lingle, who supervises the kitchen at Lawrence. According to Plaintiff, he and other general population inmates at Lawrence have been served a cold breakfast every day since April 2009 (even items that are intended to be served hot are served cold). This is so, according to Plaintiff, because inmates at Lawrence are not permitted to walk to the dining hall to eat their breakfast unlike the inmates at other level two, medium security institutions. Plaintiff further contends that breakfasts are served on unsanitary trays. As a dietary worker, Plaintiff observed trays coming back from inmates with urine and feces on them, which are then merely run through the washer. As a result, Plaintiff became ill, and has since refused to eat breakfast. In addition, it is claimed that the breakfasts offer less than 50% of the FDA-recommended amount of nutrition and are not in compliance with the IDOC master menu plan.

A review of the amended complaint reveals that Plaintiff generally reasserts his claims regarding the disparities in the conditions of confinement at Lawrence, in comparison to other level two, medium security facilities. An equal protection claim that was dismissed with prejudice is reasserted under a modified "class-of-one" theory, and an overlapping Fourteenth Amendment due process claim is added.

Like the proverbial camel that is permitted to get its nose under the tent, with its whole body soon to follow, Plaintiff has taken full advantage of the opportunity to amend the complaint. Because there is a bit of overlap between the allegations in the original complaint and the new claims regarding cold breakfasts, inadequate nutrition and unsanitary breakfast trays, the Court will permit the new Eighth Amendment claims to be added. The Court will also permit the revamped equal protection claim and the due process claim to be included in the amended complaint. Therefore, Plaintiff's motions for leave to amend (Docs. 12 and 13) shall be granted and the Court shall proceed to review the amended complaint pursuant to 28 U.S.C. § 1915A.

**The Amended Complaint**

According to the complaint, in accordance with an unpublished consent decree,[1] 20 Ill. Adm. Code §§460, 503 and 505, IDOC Administrative Directive 05.06.110, and 730 ILCS 5/3-2-2, Lawrence and 16 other prisons are designated "medium security" facilities (*see* Doc. 14-3, pp. 2-3). It is alleged that, unlike inmates at the other 16 medium security institutions, for no other reason than he is housed at Lawrence, Plaintiff is denied gym, yard and day room privileges every day, thereby restricting his ability to exercise and impacting his health because he has high blood pressure and high cholesterol (Doc. 14, p. 5). It is further alleged that Plaintiff cannot use the telephone every day (Doc. 14, p. 5). Although not specifically raised as an issue, in the prayer for relief Plaintiff seeks the ability to shower every day and access the law library three times per week (Doc. 14, p. 11). As already discussed, Plaintiff also claims: he is served cold or "not hot" breakfasts; he is not permitted to walk to the dining room for breakfast; the

---

[1] Plaintiff references *Moorehead v. McGinnis*, Case No. 86-cv-2020 (C.D. Ill. 1991), as a consent decree "that made Lawrence a Medium Prison along with all the other Medium Prisons." (Doc. 14, p. 5). The Court has been unable to locate any published version of that consent decree.

3

breakfasts are nutritionally inadequate and do not conform with the IDOC master menu plan; and breakfasts are served on unsanitary trays.

The amended complaint names as Defendants: IDOC Director Godinez, Warden Hodge, Assistant Warden Storm, Food Service Manager Densmore, Food Service Supervisor Kohn and Kitchen Supervisor Lingle. Plaintiff requests compensatory and punitive damages, as well as declaratory and injunctive relief.

Based on the allegations of the amended complaint, the Court finds it convenient to divide the *pro se* action into four counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1:** **Against Defendants Godinez, Hodge, Storm, Densmore, Kohn and Lingle for denying him due process relative to the conditions of his confinement, in violation of the Fourteenth Amendment;**

**Count 2:** **Against Defendants Godinez, Hodge, Storm, Densmore, Kohn and Lingle for denying him the equal protection of the law relative to the conditions of his confinement, in violation of the Fourteenth Amendment;**

**Count 3:** **Against Defendants Godinez, Hodge and Storm for subjecting Plaintiff to conditions of confinement (excluding food-related issues) constituting cruel and unusual punishment in violation of the Eighth Amendment; and**

**Count 4:** **Defendants Godinez, Hodge, Storm, Densmore, Kohn and Lingle for subjecting Plaintiff to conditions of confinement (only food-related issues) constituting cruel and unusual punishment in violation of the Eighth Amendment.**

**The Standard of Review**

Under 28 U.S.C. § 1915A, the Court is required to conduct a prompt threshold review of the complaint. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which

4

relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Amended Complaint, its supporting memorandum and supporting exhibits, the Court finds it appropriate to exercise its authority under Section 1915A, dismissing certain claims and defendants as explained below.

**<u>Count 1—Due Process</u>**

Plaintiff alleges that because the conditions of confinement at Lawrence are not identical to the conditions at the other 16 medium security IDOC prisons, and because he has not done anything to warrant punishment in the form of more strident conditions of confinement, and he has not had any sort of hearing, he has been denied due process, as guaranteed under the Fourteenth Amendment.

In *Sandin v. Conner*, 515 U.S. 472, 485 (1995), the Supreme Court explained that the Due Process Clause historically encompassed the notion that the State could not physically punish someone except in accordance with due process of law. *Id*. (quoting *Ingram v. Wright*,

430 U.S. 651, 674 (1977)). However, "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Sandin*, 515 U.S. at 485 (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977), quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)). Consequently,

> [t]he due process clause requires hearings when a prisoner loses more liberty than what was taken away by the conviction and original sentence. That's why the right comparison is between the ordinary conditions of a high-security prison in the state, and the conditions under which a prisoner is actually held.

*Marion v. Radtke*, 641 F.3d 874, 876 (7th Cir. 2011) (citing *Lekas v. Briley*, 405 F.3d 602, 608–09 (7th Cir. 2005)).

Plaintiff's claim is premised upon a comparison of medium security facilities, not one of the state's maximum security facilities. "The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Thus, Count 1, Plaintiff's due process claim, shall be dismissed with prejudice for failure to state a claim upon which relief can be granted.

**Count 2—Equal Protection**

In Count 2, Plaintiff alleges that Defendants violated his right to equal protection under the Fourteenth Amendment because of the difference in treatment prisoners at Lawrence receive compared to those housed at other medium security facilities.

The Equal Protection Clause forbids a state to "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. As a general matter, a "prison administrative decision may give rise to an equal protection claim only if the plaintiff can establish that 'state officials had purposefully and intentionally discriminated against him.'"

6

*Meriwether v. Faulkner*, 821 F.2d 408, 415 n.7 (7th Cir.), cert. denied, 484 U.S. 935 (1987) (citing *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)).

> The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action. A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation. Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences. It implies that a decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group.

*Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996) (quoting *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)).

The Court denied equal protection claim in the initial complaint with prejudice (*see* Doc. Pp. 3-5). Plaintiff now takes a different tack, asserting a "class-of-one" equal protection claim.

*Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 601 (2008), and *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), make clear that a class-of-one equal protection claim can succeed only if it is pleaded and proven that (1) the plaintiff has been intentionally treated differently from others similarly situated, and (2) there is no rational basis for different treatment.[2] However, in *Del Marcelle v. Brown County Corp.*, 680 F.3d 887 (7th Cir. 2012), the Court of Appeals for the Seventh Circuit explained that there is no consensus within the circuit regarding whether one must plead and prove "illegitimate animus" (Posner, J., leading opinion, affirming dismissal for failure to state a claim) ("The plaintiff must plead and prove *both* the absence of a rational basis for the defendant's action *and* some improper personal motive ... for the differential treatment."); *id.* at 913 (Wood, J., dissenting) (noting that a plaintiff must plead and prove that a state actor lacked a rational basis for singling him out); *id.* at 900 (Easterbrook,

---

[2] The Supreme Court has recognized that a class-of-one equal protection claim may be brought by one person or a number of individuals; the number of individuals in a class is immaterial for equal protection analysis. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 n. * (2000).

7

Chief Judge, concurring in the judgment) (motive or intent should play no role in a class-of-one claim). *See Jordan v. Cockroft,* 490 Fed.Appx. 813, 815 (7th Cir. 2012) (summarizing the perspectives of Circuit Judges Posner and Wood); *see also Del Marcelle*, 680 F.3d at 892-93 (collecting cases). The Supreme Court skirted the illegitimate animus issue. Regardless of the fact that Plaintiff Jefferson alleges no illegitimate animus on the part of any defendant, this class-of one claim still fails because Plaintiff does not plead that any defendant has intentionally treated him differently, only that the conditions of confinement at Lawrence are not identical to the conditions at other medium security facilities. Thus, this equal protection claim does not cross "the line between possibility and plausibility." *Twombly*, 550 U.S. at 557.

Like the driver who is ticketed for driving 60 m.p.h. in a 45 m.p.h. zone, when another driver has just passed driving 65 m.p.h. without receiving a ticket, Plaintiff is unlikely to appreciate that, although there is no rational basis for the difference in treatment, there has not been any discrimination actionable under the Equal Protection Clause. *See Enquist*, 553 U.S. at 603-04; Del *Marcelle*, 680 F.3d at 894. As in that scenario, there is no evidence that Plaintiff or the inmates at Lawrence have been intentionally singled out for disparate treatment.

"Inmates cannot expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988). States may move their charges to any prison in the system." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)). *See also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee placement in a particular prison). Accordingly, there is no guarantee that Plaintiff will receive the exact same privileges as an inmate at any other state facility, regardless of what level that institution has been classified—discretion comes into play.

> There are some forms of state action … which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Engquist*, 553 U.S. at 603.

Consequently, Count 2 shall be dismissed with prejudice for failure to state a claim upon which relief can be granted. Plaintiff has had two opportunities to perfect his equal protection claim, so dismissal with prejudice and without a third opportunity to amend is warranted. *See Agnew v. NCAA*, 683 F.3d 328, 347-48 (7th Cir. 2012).

**<u>Count 3—Conditions of Confinement</u>**

Count 3 pertains only to Director Godinez, Warden Hodge and Assistant Warden Storm, and the non-food related conditions of Plaintiff's confinement. According to the Amended Complaint, Plaintiff is denied the opportunity for daily gym, yard and day room privileges, thereby restricting his ability to exercise. Plaintiff stresses that he has high blood pressure and high cholesterol. Also, he is not permitted to use a telephone every day, and his ability to access the law library is restricted to something less than three days per week.[3] One of Plaintiff's administrative grievances is attached to the Amended Complaint and it provides a bit more detail (Doc. 14-5, p. 2). There is no day room, but Plaintiff is allowed yard three times per week and gym twice per week. He is allowed to shower three times per week, and use a telephone three times per week.

---

[3] Plaintiff does not suggest that he has suffered any prejudice from being denied unfettered law library access or unlimited use of a telephone that could form the basis of a First Amendment claim.

The Eighth Amendment prohibiting cruel and unusual punishment is applicable to the states through the Fourteenth Amendment. It has been a means of improving prison conditions that were constitutionally unacceptable. *See, e.g., Robinson v. California*, 370 U.S. 660, 666 (1962); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994). As the Supreme Court noted in *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981), the amendment reaches beyond barbarous physical punishment to prohibit the unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime. *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The Constitution also prohibits punishment that is totally without penological justification. *Gregg*, 428 U.S. at 183.

Not all prison conditions trigger Eighth Amendment scrutiny—only deprivations of basic human needs like food, medical care, sanitation and physical safety. *Rhodes,* 452 U.S. at 346; s*ee also James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992). Prisoners cannot expect the "amenities, conveniences, and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir.1988). However, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter,* 501 U.S. 294, 304 (1991).

Even after being given a second opportunity to re-plead this claim, Plaintiff's cursory statements are not sufficient to indicate that he suffered any physical, psychological, or "probabilistic" harm from these alleged conditions. *See Thomas v. Illinois,* 697 F.3d 612, 614-15 (7th Cir. 2012) (depending on severity, duration, nature of the risk, and susceptibility of the inmate, prison conditions may violate the Eighth Amendment if they caused either physical,

10

psychological, or probabilistic harm); *see also Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009) (conclusory legal statements are not sufficient to state a claim).

As a general matter, the denial of exercise for as long as 90 days in a row has been found not to violate the Eighth Amendment. *See Pearson v. Ramos*, 237 F.3d 881, 884-85 (7th Cir. 2001). The denial of exercise can constitute an Eighth Amendment violation *if* a health issue results. *Delaney v. DeTella*, 256 F.3d 679, 683-84 (7th Cir. 2001). Although Plaintiff suggests that restrictions on exercise affect his health because he has high blood pressure and high cholesterol, there is nothing to suggest that this is more than just a generalized fear. Again, Plaintiff has failed to cross the line between what is possible and what is plausible.

In *Davenport v. DeRobertis*, 844 F.2d 1310, 1316 (7th Cir. 1988), the appellate court observed, "There would be a special irony in requiring the State of Illinois to provide ... three showers a week, when many law-abiding poor people in dilapidated public housing projects do not have working showers." Plaintiff has not indicated any health issue has resulted from his ability to shower only three times per week.

None of the other conditions cited by Plaintiff—telephone use and law library access—touch upon a basic human need.

For these reasons, Count 3 shall be dismissed with prejudice because Plaintiff has failed to state a claim upon which relief can be granted regarding the non-food related conditions of his confinement, even after two opportunities to do so.

**Count 4—Conditions of Confinement**

Count 4 pertains only to food related conditions of confinement at Lawrence, and Director Godinez, Warden Hodge, Assistant Warden Storm, and Food Service officials Densmore, Kohn and Lingle.

Plaintiff claims: he is served cold or "not hot" breakfasts every day; he is not permitted to walk to the dining room for breakfast; the breakfasts are nutritionally inadequate and do not conform with the IDOC master menu plan; and breakfasts are also served on unsanitary trays, which on at least one occasion made Plaintiff ill.

As already noted, not all prison conditions trigger Eighth Amendment scrutiny—only deprivations of basic human needs like food, medical care, sanitation and physical safety. *Rhodes,* 452 U.S. at 346; s*ee also James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992). Prisoners cannot expect the "amenities, conveniences, and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir.1988). However, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter,* 501 U.S. 294, 304 (1991).

Prisoners do have a right to adequate nutrition. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, there is no right to appetizing meals—no right to hot breakfasts. *See Lunsford v. Bennett*, 17 F.3d 1574, 1578 (7th Cir. 1994) (complaint about "cold, poorly prepared beans" did not state Eighth Amendment claim). Similarly, although not being able to walk to the dining room to eat breakfast may contribute to the food being cold, no basic human need is impacted. Insofar as Plaintiff complains that breakfast is served in inadequate portions, which are less than 50% of the FDA daily recommended nutritional allowances, and the IDOC master menu is not followed, his claim falls short. As pleaded, the amended complaint only takes issue with breakfast, which is only one of several meals served each day, and not enough information

12

is given to discern that there is a plausible claim regarding inadequate nutrition. For example, only being served two meals per day on a regular basis may satisfy the Eighth Amendment. *Jones v. Illinois Department of Corrections*, 684 F.3d 667 (7th Cir. 2012) (citing *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)). If Plaintiff intended to assert a claim regarding a denial of overall nutrition, he should move to amend this claim (which has not been presented before now).

In contrast, the deliberate withholding of adequately nutritious food or serving tainted food with the effect of weight loss or illness violates the Eighth Amendment. The import of Plaintiff's allegations is that trays covered in urine and feces are not adequately cleaned when they are run through the washer (which was Kitchen Supervisor Lingle's solution for the filthy trays). Thus, Plaintiff's claim that the breakfast trays are not sanitized properly and have made him ill, states a plausible Eighth Amendment violation.

Liability under Section 1983 also requires a defendant's personal involvement in the alleged constitutional violation. *Palmer v. Marion County,* 327 F.3d 588, 594 (7th Cir. 2003). The defendant must have caused or participated in the violation. *Pepper v. Village of Oak Park,* 430 F.3d 809, 810 (7th Cir. 2005). Thus, the doctrine of *respondeat superior* is not applicable to Section 1983 actions. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police,* 251 F.3d 612, 651 (7th Cir. 2001)). Sufficient personal involvement is alleged relative to the individual capacity claims against Food Service Manager Densmore, Food Service Supervisor Kohn and Kitchen Supervisor Lingle, all of whom were alerted to the unsanitary trays and did nothing. Official capacity claims against these three defendants cannot be discounted at this stage and shall also proceed.

The amended complaint does not contain any allegations linking Warden Hodge or Assistant Warden Storm to the food related allegations (*see* Doc. 14, pp. 6-10; Doc. 14-2, p. 3). Therefore, the individual capacity claim in Count 4 against Warden Hodge shall be dismissed without prejudice. However, Warden Hodge shall remain a defendant in his official capacity because Plaintiff prays for injunctive relief. The individual and official capacity claims in Count 4 against Assistant Warden Storm shall be dismissed without prejudice.

IDOC Director Godinez, sued in both his individual and official capacities[4], is clearly sued because of his supervisory position. It is asserted that Godinez makes the rules and is supposed to make sure that they are followed by each prison (Doc. 14, p. 9). Plaintiff specifically alleges relative to the Eighth Amendment claims that, "Director Godinez is responsible for Lawrence staff and is held accountable for their action" (Doc. 14, p. 10). Godinez did authorize the general IDOC Administrative Directive regarding "Food Service Sanitation and Safety" (Doc. 14-1, pp. 1-9). However, there is nothing to suggest that he knew about the dirty trays, or otherwise authorized or condoned any policy that the trays would not be properly sanitized. The sanitation and safety directives do not suggest any policy permitting unsanitary trays to be used. Therefore, all claims against Godinez in Count 4 shall be dismissed without prejudice.

For all of the reasons stated, the claims in Count 4 regarding the temperature of the breakfast meals and Plaintiff's inability to go to the dining hall to eat breakfast are dismissed with prejudice for failure to state an Eighth Amendment claim upon which relief can be granted. The claims in Count 4 regarding inadequate nutrition are dismissed without prejudice. The

---

[4] Insofar as Godinez is sued in his official capacity, such a suit is actually against the IDOC, which otherwise is not named as a defendant. *See Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 670 n. 2 (7th Cir. 2012).

claims in Count 4 pertaining to unsanitary breakfast trays shall proceed against Defendant Hodge in his official capacity only, and against Defendants Densmore, Kohn and Lingle in their official and individual capacities.

It is worth noting that the amended complaint specifically addresses *only* breakfast and breakfast trays, but logic suggests that a food tray may be used for other meals during the day, so Plaintiff may want to consider moving for leave to amend this claim (which has not been presented before now).

The Court further notes that Plaintiff references a pending law suit filed by other inmates regarding being fed soy, and articles are appended to the Amended Complaint suggesting soy poses a health hazard. However, the amended complaint does not clearly state a claim regarding soy and its role in Plaintiff's diet. Therefore, Plaintiff may want to consider amending his claims regarding nutrition.

**Pending Motions**

As already discussed, Plaintiff's motions for leave to amend (Docs. 12 and 13) shall be **GRANTED**.

Because Plaintiff has been granted pauper status by separate order (Doc. 7), his motion for service of process at government expense (Doc. 3) shall be **GRANTED**.

**Disposition**

For the reasons stated, the Fourteenth Amendment due process and equal protection claims in Counts 1 and 2, and the Eighth Amendment (non-food related) condition of confinement claims in Count 3 are **DISMISSED with prejudice**.

The claims in Count 4 regarding the temperature of the breakfast meals and Plaintiff's inability to go to the dining hall to eat breakfast are **DISMISSED with prejudice**. Plaintiff's

Eighth Amendment claims in Count 4 regarding inadequate nutrition are **DISMISSED without prejudice**.

Defendants **GODINEZ** and **STORM** shall be **DISMISSED** from this action **without prejudice**.

The only claims that shall proceed are the Eighth Amendment claims in Count 4 regarding unsanitary breakfast trays against Defendant **HODGE** in his official capacity, and against Defendants **DENSMORE**, **KOHN** and **LINGLE** in their official and individual capacities.

The Clerk of Court shall prepare for Defendants **DENSMORE**, **KOHN** and **LINGLE**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:** May 21, 2013

/s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge